1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANDREY LARSHIN,

11              Petitioner,              No.  CIV-S-10-835 GGH P
          vs.
12

13   RAUL LOPEZ,                         ORDER and

14                                       FINDINGS & RECOMMENDATIONS
              Respondent.
15   _____/

16   I.  Introduction

17              Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.  Petitioner challenges the Sacramento County Superior Court's

19   imposition of the upper term sentence of nine years for assault with a firearm pursuant to

20   California Penal Code[1] section 245, subdivision (b)(1); and the upper term of ten years for the

21   attached firearm enhancement pursuant to section 12022.6, subdivision (a).  He seeks relief on

22   the grounds that the trial court imposed the upper term sentences in violation of his right to a jury

23   trial as guaranteed by the Sixth and Fourteenth Amendments of the U.S. Constitution.

24   After carefully considering the record, the court recommends that the petition be denied.

25   _____

26   [1] Subsequent statutory references are to the California Penal Code unless otherwise
     indicated.

1

1  II.  Anti-Terrorism and Effective Death Penalty Act (AEDPA)

2          The Anti-Terrorism and Effective Death Penalty Act (AEDPA) "worked

3  substantial changes to the law of habeas corpus," establishing more deferential standards of

4  review to be used by a federal habeas court in assessing a state court's adjudication of a criminal

5  defendant's claims of constitutional error.  Moore v. Calderon, 108 F.3d 261, 263 (9th Cir.

6  1997).

7          In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme

8  Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion

9  for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy

10  between "contrary to" clearly established law as enunciated by the Supreme Court, and an

11  "unreasonable application of" that law.  Id. at 1519.  "Contrary to" clearly established law applies

12  to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme

13  Court on a point of law, or (2) if the state court case is materially indistinguishable from a

14  Supreme Court case, i.e., on point factually, yet the legal result is opposite.

15          "Unreasonable application" of established law, on the other hand, applies to

16  mixed questions of law and fact, that is, the application of law to fact where there are no factually

17  on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

18  Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the

19  AEDPA standard of review which directs deference to be paid to state court decisions.  While the

20  deference is not blindly automatic, "the most important point is that an *unreasonable* application

21  of federal law is different from an incorrect application of law....[A] federal habeas court may not

22  issue the writ simply because that court concludes in its independent judgment that the relevant

23  state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

24  that application must also be unreasonable."  Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at

25  1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the

26  objectively unreasonable nature of the state court decision in light of controlling Supreme Court

2

1  authority.  <u>Woodford v. Viscotti</u>, 537 U.S. 19, 123 S. Ct. 357 (2002).

2      Under § 2254(d), a habeas court must determine what arguments or theories
        supported or, as here, could have supported, the state court's decision; and
3       then it must ask whether it is possible fairminded jurists could disagree that
        those arguments or theories are inconsistent with the holding in a prior
4       decision of this Court.
                                        ***
5
6       As a condition for obtaining habeas corpus from a federal court, a state
        prisoner must show that the state court's ruling on the claim being presented in
7       federal court was so lacking in justification that there was an error well
        understood and comprehended in existing law beyond any possibility for
        fairminded disagreement.
8

9  <u>Harrington v. Richter</u>, __ U.S.__, __S.Ct.__, 2011 WL 148587 (2011)

10         "Clearly established" law is law that has been "squarely addressed" by the United

11  States Supreme Court.  <u>Wright v. Van Patten</u>, 552 U.S. 120, 125, 128 S.Ct. 743, 746 (2008).

12  Thus, extrapolations of settled law to unique situations will not qualify as clearly established.

13  <u>See</u> e.g., <u>Carey v. Musladin</u>, 549 U.S. 70, 76, 127 S.Ct. 649, 653-54 (2006) (established law not

14  permitting state sponsored practices to inject bias into a criminal proceeding by compelling a

15  defendant to wear prison clothing or by unnecessary showing of uniformed guards does not

16  qualify as clearly established law when spectators' conduct is the alleged cause of bias injection).

17         The state courts need not have cited to federal authority, or even have indicated

18  awareness of federal authority in arriving at their decision.  <u>Early v. Packer</u>, 537 U.S. 3, 123 S.

19  Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is

20  contrary to, or an unreasonable application of, established Supreme Court authority.  <u>Id</u>.  An

21  unreasonable error is one in excess of even a reviewing court's perception that "clear error" has

22  occurred.  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the

23  established Supreme Court authority reviewed must be a pronouncement on constitutional

24  principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules

25  binding only on federal courts.  <u>Early v. Packer</u>, 537 U.S. at 9, 123 S. Ct. at 366.

26  \\\\

1    However, where the state courts have not addressed the constitutional issue in

2    dispute in any reasoned opinion, the federal court will independently review the record in

3    adjudication of that issue.  "Independent review of the record is not de novo review of the

4    constitutional issue, but rather, the only method by which we can determine whether a silent state

5    court decision is objectively unreasonable." <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir.

6    2003).

7    III.  <u>Background</u>

8    A.  <u>Offense and Sentencing</u>

9    In its unpublished opinion affirming the trial court's imposition of sentence,

10   following a remand with directions from the California Supreme Court, the California Court of

11   Appeal for the Third Appellate District provided the following factual summary:

> Although Larshin was convicted on numerous counts, his appellate
> contentions are limited, and we therefore need not recite the details
> of all counts.
>
> Larshin was charged with 15 counts of robbery (§ 211), attempted
> extortion FN4 (§ 524), criminal threats (§ 422), and assault with a
> semiautomatic firearm ( § 245, subd. (b)), as to various victims on
> various dates in 2003 and 2004, plus enhancements for personal
> use of a firearm (§§ 12022.5, subd. (a)(1), 12022.53, subd. (b)).
> Count Eleven was dismissed by the court. The jury found Larshin
> not guilty on Count One (attempted extortion of Peter Konishchuk)
> and not guilty on Count Nine (attempted robbery of Yaroslav
> Tseyk). The jury found Larshin guilty on the other 12 counts FN5
> and found true that Larshin personally used a firearm for Counts
> Three through Eight within the meaning of sections 12022.5,
> subdivision (a)(1), and 12022.53, subdivision (b).
>
> FN4. Section 524, fn. 3, ante, makes attempted extortion
> punishable in the same manner as if the defendant had actually
> obtained the money or property from the victim.
>
> FN5. The jury found Larshin guilty of criminal threat against Peter
> Konishchuk on March 29, 2004 (Count Two); robbery, criminal
> threat, assault with a firearm, extortion, attempted extortion, and
> attempted robbery as against victim Yaroslav Tseyk on various
> dates in 2003 and 2004 (Counts Three through Eight, Ten and

4

Twelve [Count Eleven was dismissed] ); attempted extortion and dissuading a witness from testifying, as to victim Konstantin Brutskiy in April 2004 (Counts Thirteen and Fourteen); and criminal threat against Stephanie Johnson in August 2002 (Count Fifteen).

. . .

Count One (Shchirskiy's Attempted Extortion)[2]

Shchirskiy complains the trial court ordered him to pay restitution unrelated to the sole crime of which he was convicted-Count One, attempted extortion of Konishchuk. The evidence adduced regarding Count One included the following:

One day in March 2004, Konishchuk was in his automotive body shop, making repairs to a customer's Mercedes Benz, when a group of persons including defendants drove up in a Jeep and inquired about having Konishchuk repair a Jaguar assertedly owned by Shchirskiy. Three days later, Konishchuk arrived at work to find the entrance open and the Mercedes gone. He reported the theft to the police. He then received telephone calls from Shchirskiy, demanding $10,000 for the return of the Mercedes. Konishchuk said he would try to get the money. He reported the telephone calls to the police. Detective Prokopchuk had Konishchuk participate in several tape-recorded telephone calls on March 24 and 25, 2004 (played for the jury, with translation provided), in which Shchirskiy repeated his demands for money. Konishchuk said he had $8,000 and was trying to get the other $2,000 but wanted to see the car before turning over the money. Shchirskiy refused, became upset, and threatened to burn the car. Konishchuk eventually said he would not pay. He later learned that the police found the Mercedes "burned down" on March 23, 2004 (before the recorded phone conversations).

After the jury found Shchirskiy guilty of attempted extortion in Count One (victim Konishchuk), the trial court sentenced him to two years in prison and ordered him to pay $1,500 restitution for an amount extorted from the car owner (a crime for which Shchirskiy was not charged, as we discuss post ).

\\\\

---

[2] Count one against petitioner's co-defendant is described herein for its background information regarding count two against petitioner.

<u>Count Two (Larshin's Criminal Threat Against Konishchuk)</u>

The day after the monitored phone calls, Larshin telephoned Konishchuk, said his (Larshin's) home had been raided by the police, and he (Larshin) would "make [Konishchuk] a hole in the head" if Konishchuk did not get Larshin's name removed from the police's list of suspects for the theft of the Mercedes. Larshin also told Konishchuk to leave town or he would "have no life here anyway." Konishchuk became "a little bit scared" and believed defendant was serious and could carry out the threat.

Larshin testified he did not threaten Konishchuk. He merely called to ask Konishchuk to remove Larshin from the suspect list because he had nothing to do with the theft.

<u>Counts Three through Six (Larshin's Offenses Against Yaroslav Tseyk)</u>

Tseyk testified he was initially friendly with Larshin. Larshin once commented on the amount of cash carried by Tseyk (who worked as an airline baggage checker). While they were still friendly, Larshin showed Tseyk a loaded semiautomatic gun and said he carried it all the time. On other occasions thereafter, Tseyk saw Larshin with the gun in his waistband or putting the gun in the glove compartment.

Tseyk testified that one day in 2003 (he did not remember the date), Larshin called and asked Tseyk to meet him at an apartment complex near Norwood and Interstate 80. When Tseyk arrived, Larshin and several other persons, all armed with guns, approached Tseyk's car. Larshin asked for $1,000 for "protection." Tseyk said no. Larshin, with his gun in his hand, told Tseyk to pay the money or he would "end up in the American River flowing [ sic ] down the water." Larshin placed the point of his gun touching the side of Tseyk's head. Tseyk was afraid and agreed to pay the money. Larshin told him to bring the money the next day. Tseyk agreed to do so. The next day, Larshin called Tseyk in the morning, and Tseyk brought him $1,000 in cash. When asked why he gave Larshin the money, Tseyk said, "So, he would leave me alone." Larshin's companions were not with him when he got the money.[3]

\\\\

---

[3] The events described in this paragraph pertain to Count Five, the basis of the upper term sentences at issue in this action.

This scenario of Larshin obtaining money by threatening Tseyk was repeated on later occasions, which were the subject of other counts not at issue in this appeal.

Larshin testified he met Tseyk at the apartment complex but had no gun, did not threaten Tseyk, and did not receive $1,000 from Tseyk. Larshin said Tseyk asked for help in buying a gun because another man (Oleg) threatened him with a knife. Larshin went to Oleg to intervene, but Oleg said Tseyk was lying, and Tseyk owed money for a ticket he got when he borrowed Oleg's car. Larshin drove back to the apartment complex, angry that Tseyk had tried to use him to get out of paying money he owed to Oleg. Larshin hit Tseyk and took $92 cash that was inside the wallet that fell out of Tseyk's pocket.

After the jury returned its verdicts, the trial court sentenced Larshin to a total of 29 years and four months-the upper term of nine years on the Count Five assault with a firearm; one year on Count Seven extortion; one year on Count Eight extortion; three years on Count Fourteen dissuading a witness in violation of section 136.1; eight months each on Counts Two, Ten, Thirteen, and Fifteen extortion and criminal threats; 10 years for the section 12022.5, subdivision (a)(1), gun enhancement attached to the Count Five assault with a firearm; and one year, four months for the gun enhancements attached to Counts Seven and Eight.

Sentences on the remaining counts (Counts Three, Four, Six and Twelve) were stayed under section 654.

(Lod. Doc. 7 at 2-7.)

At petitioner's sentencing hearing, the trial court stated that it had imposed the upper terms of nine years and the enhancement of ten years, respectively, on Count Five "because the factors in aggravation far outweigh the nonexistent factors in mitigation."  (3RT 756-757.) Specifically, the trial court found the following circumstances in aggravation:

Under subdivision (A), subdivision (1) [of California Rule of Court 4.421], the crimes involved great violence and threat of bodily harm or other acts that disclosed a high degree of cruelty, viciousness or callousness.

Under Rule (A)(2), I decline to consider that rule as it impinges on the Court's discretion to impose the upper term, which I plan to do. So I'm not considering Rule (A)(2) specifically.

7

With respect to Rule (A)(3), I do find the victims in this case were particularly vulnerable for the following reasons: Number one, English was their second language; number two, they were new to this country and, because of their backgrounds, had a general distrust of law enforcement, and that made them very vulnerable and easy persons to prey upon, which I believe Mr. Larshin took full advantage of.

Pursuant to Rule (A)(4), I do find that the Defendant did induce others to participate in the commission of these crimes.  He did occupy a position of leadership and dominance in the commission of these crimes pursuant to Rule (A)(6)[.] . . . Defendant threatened witnesses and attempted to interfere with their rights as American citizens to seek redress through the courts and seek assistance from law enforcement on his continuous threats and intimidating behavior.

And pursuant to Rule (A)(8), I also find the crimes that Mr. Larshin committed were carried out with planning and some degree of sophistication.  I also find with respect to Rule (B)(5) that Defendant's prior performance on probation has been unsatisfactory.  I have found no circumstances in mitigation so that the factors in aggravation far outweigh the nonexistent circumstances in mitigation that does justify this Court in imposing the upper term.

(3CT 755-756.)

Regarding the Rule (B)(5) aggravating factor, at issue here: Petitioner's probation report indicated that he had been convicted of three misdemeanor offenses: possession of stolen property in 1996, for which he was sentenced to three years' informal probation; possession of stolen property in 1998, for which was sentenced to three years' informal probation; and second degree vehicle burglary in 1999, for which he was sentenced to three years' formal probation.  As to the first two convictions, the probation report noted: "Details requested; not received."  The report indicated that its summaries of these two convictions were based at least in part on petitioner's own statements. (2CT 573-575.)

On October 28, 2005, petitioner was sentenced to a total prison term of 29 years and four months.  (2 CT 598.)

B. Procedural History

Petitioner appealed his conviction to the California Court of Appeal, Third Appellate District on April 13, 2006, arguing that the imposition of the upper term sentence violated his right to a jury trial.  (Lod. Doc. 1.)  On December 29, 2006, the court of appeal denied petitioner's claim.  (Lod. Doc. 4 at 18-20.)  On February 14, 2007, petitioner filed a petition for review in the California Supreme Court.  (Lod. Doc. 5.)  On March 14, 2007, the California Supreme Court granted the petition and deferred further action in the case pending its decision in People v. Towne, 44 Cal. 4th 63, (2008), which addressed the sentencing matter at issue in petitioner's appeal.  (Lod Docs. 6, 7.)  On August 27, 2008, following its decision in Towne, the Supreme Court transferred the case to the Court of Appeal, Third Appellate District, with directions to vacate its decision and reconsider the cause in light of Towne.  (Lod. Doc. 7 at 2.)  On November 5, 2008, the  court of appeal again denied petitioner's sentencing claim in a reasoned opinion.  (Lod. Doc. 7.)  Petitioner filed a second review petition to the California Supreme Court on November 20, 2008.  (Lod. Doc. 8.)  The petition was summarily denied on January 14, 2009.  (Lod. Doc. 9.)

Petitioner filed the instant habeas petition on April 8, 2010.  Respondent filed an answer on September 13, 2010.  Petitioner filed a traverse on January 16, 2011.

IV.  Analysis

A.  Petitioner's Claim

Petitioner challenges the trial court's imposition of the upper term of nine years on Count Five, assault with a firearm, under section 245(b); and the upper term of 10 years for the section 12022.5(a)(1) gun enhancement attached to Count Five.  In total, he was sentenced to nineteen years based on this count.  (2 CT 596.)  Petitioner points out that, in Cunningham v. California, 549 U.S. 270, 288-289, 127 S.Ct. 856 (2007), the U.S. Supreme Court held that, except for a prior conviction, any fact that increases the penalty for a crime beyond the middle term as specified by California law must be submitted to a jury.  He argues that, under

9

1    <u>Cunningham</u>, none of the aggravating factors found by the the trial court were constitutional

2    bases for imposing the upper term.  Petitioner specifically challenges the trial court's reliance on

3    the Rule B(5) aggravating factor ("The defendant's prior performance on probation or parole was

4    unsatisfactory.").  He argues that "[t]he narrow exception for prior convictions does not extend to

5    a defendant's prior performance on misdemeanor probation under the facts of this case."

6    (Traverse at 7.)  Here, petitioner argues, the probation report indicating that petitioner had been

7    convicted of three misdemeanor offenses was "not complete, with all three[4] of the prior cases

8    stating that the details had been requested 'but not received' by the probation officer."  (<u>Id</u>.)  The

9    trial court's reliance on this factor was not harmless, petitioner asserts, "since there is grave

10   doubt that the jury would have been able to make a finding as to petitioner's performance on

11   probation from the scant records available."  (<u>Id</u>.)

12        Respondent counters that the state court of appeal reasonably interpreted the

13   "prior conviction" exception to include petitioner's unsatisfactory performance on probation as

14   established by his prior misdemeanor convictions.  Respondent asserts that this interpretation

15   was not contrary to Supreme Court precedent and therefore must be upheld on AEDPA review.

16   (Answer at 11.)

17   B.  <u>State Court Opinion</u>

18        In the last reasoned state court decision to consider petitioner's <u>Apprendi</u> claim,

19   the California Court of Appeal, Third Appellate District, on remand from the California Supreme

20   Court, addressed petitioner's arguments as follows:

21            The trial court imposed the upper term on Count Five (assault with
             a firearm) and the upper term on the attached section 12022.5
22            enhancement because (1) the crimes involved great violence and
             threat of great bodily harm or acts disclosing a high degree of
23            cruelty, viciousness or callousness; (2) the victims were
             particularly vulnerable because English was their second language,
24

25   _____

26   [4] Actually, as described above, only two of three case reports noted: 'Details requested,
     not received." (2CT 573-574.)

                                              10

they were new to this country and had a general distrust of law enforcement; (3) Larshin induced others to participate in the crimes and threatened witnesses; (4) the crimes involved planning and some degree of sophistication; (5) Larshin's prior performance on probation was unsatisfactory; and (6) there were no circumstances in mitigation.

Larshin contends the imposition of the upper terms, in reliance on facts not submitted to the jury and not proved beyond a reasonable doubt, violated Blakely v. Washington (2004) 542 U.S. 296, and the federal constitutional rights to a jury trial (6th Amendment) and due process (14th Amendment). He argues we should consider this contention despite his failure to raise it in the trial court. The Attorney General does not urge forfeiture, and we shall address the issue.

Although the court gave a variety of reasons for its decision, one aggravating circumstance will suffice to impose the upper term. (People v. Osband (1996) 13 Cal.4th 622, 732.)

The California Supreme Court in the recent opinion of People v. Towne (2008) 44 Cal.4th 63, said "the federal constitutional right to a jury trial and proof beyond a reasonable doubt on aggravating circumstances does not extend to the circumstance that a defendant was on probation or parole at the time of the offense or has served a prior prison term." (Id. at pp. 76, 79, 80.) A defendant who committed another offense while on probation demonstrates he is less amenable to rehabilitation and, accordingly, more deserving of punishment. (Id. at p. 80.) "Whether the aggravating circumstance of a defendant's prior unsatisfactory performance on probation or parole comes within the Almendarez-Torres [FN7] exception [factor related to recidivism could be determined by reference to court records] ... will depend upon the evidence by which that circumstance is established in a particular case. In some instances, the defendant's unsatisfactory performance on probation or parole is proved by evidence demonstrating that, while previously on probation or parole, he committed and was convicted of new offenses.... When a defendant's prior unsatisfactory performance on probation or parole is established by his or her record of prior convictions, it seems beyond debate that the aggravating circumstance is included within the Almendarez-Torres exception and that the right to a jury trial does not apply. [¶] On the other hand, in some instances, a finding of unsatisfactory performance could be based upon other evidence of misconduct that was not previously adjudicated in a criminal trial. For example, a presentence report might allege that the defendant did not appear

for appointments, failed a drug test, or stopped attending counseling sessions as directed. Such assertions may be based on information obtained from the probation officer or others and may be open to dispute." (Towne, supra, 44 Cal.4th at p. 82.) In circumstances where a finding of poor performance on probation can be established only by facts other than the defendant's prior convictions, the right to a jury trial applies. ( Ibid.)

FN7. Almendarez-Torres v. United States (1998) 523 U.S. 224 [140 L.Ed.2d 350].

Here, the record shows Larshin committed two criminal offenses (not the current offenses) while on probation. Thus, the probation report shows that, in June 1997, Larshin was convicted of possession of stolen property (§ 496) and was placed on three years informal probation. Within that three year period, in November 1998, he committed the offense of possession of stolen property, for which he was convicted and placed on three years informal probation. In March 1999, while on probation, he committed vehicle burglary (§ 459), for which he was convicted.

Thus, defendant was not entitled to a jury trial on the matter of unsatisfactory performance on probation, and his unsatisfactory performance on probation supports the sentence.

(Lod. Doc. 7 at 18-21.)

C.  Legal Standard

A criminal defendant is entitled to a trial by jury and to have every element necessary to sustain his conviction proven by the state beyond a reasonable doubt.  U.S. Const. amends. V, VI, XIV.  In 530 U.S. 466, 490, 120 S.Ct. 2348 (2000), the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment requires any fact other than a prior conviction that "increases the penalty for a crime beyond the prescribed statutory maximum" to be "submitted to a jury and proved beyond a reasonable doubt."  530 U.S. at 490. Thereafter, the Supreme Court held that a defendant in a criminal case is entitled to have a jury determine beyond a reasonable doubt any fact that increases the statutory maximum sentence, unless the fact was admitted by the defendant or was based on a prior conviction.  Blakely v.

1   <u>Washington</u>, 542 U.S. 296, 303-304, 124 S.Ct. 2531 (2004).  The Supreme Court also clarified

2   the definition of "statutory maximum" for purposes of the constitutional rule: "the relevant

3   'statutory maximum' is not the maximum sentence a judge may impose after finding additional

4   facts, but the maximum he may impose without any additional facts."  <u>Id</u>.

5          Next, in <u>Cunningham</u>, the Supreme Court held that California's Determinate

6   Sentencing Law violates a defendant's right to a jury trial to the extent it permits a trial court to

7   impose an upper term based on facts found by the court rather than by a jury.  549 U.S. at 291.

8   The Supreme Court also determined in <u>Cunningham</u> that "the middle term prescribed in

9   California's statutes, not the upper term, is the relevant statutory maximum."  <u>Id</u>. at 288.[5]  The

10  Ninth Circuit has subsequently held that <u>Cunningham</u> "did not announce a new rule of

11  constitutional law and may be applied retroactively on collateral review."  <u>Butler v. Curry</u>, 528

12  F.3d 624, 639 (9th Cir.), <u>cert. denied</u>, ___U.S.___, 129 S. Ct. 767 (2008).

13         Under California law, the existence of a single aggravating circumstance is legally

14  sufficient to make the defendant eligible for the upper term sentence.  <u>Butler</u>, 528 F.3d at 642;

15  <u>Black II</u>, 41 Cal.4th 799; <u>People v. Osband</u>, 13 Cal. 4th 622, 728 (1996).  That is, only one

16  aggravating factor is necessary to set the upper term as the "statutory maximum" for <u>Apprendi</u>

17  and <u>Blakely</u> purposes as long as it is established in accordance with the constitutional

18  requirements set forth in <u>Blakely</u>.  <u>Black II</u>, 41 Cal.4th at 812.  While the sentencing court may

19  make factual findings with respect to additional aggravating circumstances, these findings,

20  themselves, do not further raise the authorized sentence beyond the upper term.  <u>Id</u>.

21         Furthermore, with respect to claims of <u>Apprendi</u> error, "the relevant question is

22  not what the trial court would have done, but what it legally could have done."  <u>Butler</u>, 528 F.3d

23  _____

24         [5]  The California Legislature responded to the decision in <u>Cunningham</u> by amending
    California Penal Code § 1170(b) to vest sentencing courts with the discretion to impose the
25  lower, middle or upper terms without making specific factual findings thereby making the upper
    term the maximum term under California law.  <u>See</u> <u>People v. Sandoval</u>, 41 Cal. 4th 825, 844-52
26  (2007).

13

1    at 648.  Thus, federal courts have acknowledged that under California law, only one valid

2    aggravating factor need be found to authorize an upper term sentence.  Butler, 528 F.3d at 641;

3    Kessee v. Mendoza-Powers, 574 F.3d 675, 676 n.1 (9th Cir. 2009); see also Moore v. Evans, No.

4    2:09-cv-2737-JFM (HC), 2010 WL 4290080, at *9 (E.D. Cal. Oct. 22, 2010); Armstrong v.

5    Small, No. CV 07-1101 RGK (FMO), 2009 WL 863351, at *17 (C.D. Cal. Mar. 30, 2009).  That

6    the sentencing judge might not have imposed an upper term sentence in the absence of additional

7    aggravating factors does not implicate the Sixth Amendment.  Butler, 528 F.3d at 649.

8    Accordingly, in this case petitioner's upper term sentence on the enhancement is not

9    unconstitutional if at least one of the aggravating factors that the sentencing judge relied upon

10   was established in a manner consistent with the Sixth Amendment.

11           The Ninth Circuit has held that a sentencing court's determination that an offense

12   was committed while the defendant was on probation does not come within the prior offense

13   exception, Butler v. Curry, 528 F.3d 624, 641 (9th Cir. 2008), but also has concluded that the

14   Butler holding is not clearly established Supreme Court law, so cannot be the basis for federal

15   habeas relief, Kessee v. Mendoza–Powers, 574 F.3d 675, 679 (9th Cir. 2009).  The Ninth Circuit

16   has also held that "Apprendi expressly excludes recidivism from its scope.  Defendant's criminal

17   history need not be proved to a jury beyond a reasonable doubt. [citations]."  United States v.

18   Martin, 278 F.3d 988, 1006 (9th Cir. 2002).

19   D.  Discussion

20           Here, the trial court's Rule (B)(5) finding of unsatisfactory performance on

21   probation was based on the fact that petitioner committed two additional crimes while on

22   probation, as reflected in his probation report.  Petitioner does not dispute that he committed

23   these offenses; indeed, the criminal history in the probation report appears to be partially based

24   on his own statements.  Whether or not the probation officer received additional information as

25   to these crimes, the mere fact that they occurred indicates recidivism, which the Ninth Circuit has

26   held to be excluded from Apprendi.  Martin, supra, 278 F.3d at 1006.  That these prior offenses

14

1   were misdemeanors does not appreciably change the constitutional analysis under AEDPA.

2   Recent lower court decisions have found that a defendant's prior convictions as reflected on his

3   probation report may be reasonably interpreted to fall within the "prior conviction" exception.

4   E.g., Clemens v. MacDonald, No. 2:08-cv-2588 KJN P, 2011 WL 1260047 at *24 (E.D. Cal.

5   March 30, 2011); Jordan v. Neotti, No. cv-09-6874 ODW(E), 2011 WL 1532059 at *10 (C.D.

6   Cal. March 10, 2011); see also Towne, supra, 44 Cal. 4th at 82 ("When a defendant's prior

7   unsatisfactory performance on probation or parole is established by his or her record of prior

8   convictions, it seems beyond debate that the aggravating circumstance is included within the

9   Almendarez-Torres exception and that the right to a jury does not apply.")

10        In sum, the court is persuaded that the state court's decision was neither contrary

11  to, nor an unreasonable application of, clearly established federal law. See 28 U.S.C.

12  § 2254(d)(1).

13        Accordingly, IT IS HEREBY ORDERED that the Clerk is directed to assign a

14  district judge to this case.

15        IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

16  habeas corpus be denied.

17        If petitioner files objections, he shall also address if a certificate of appealability

18  should issue and, if so, as to which issues.  A certificate of appealability may issue under 28

19  U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a

20  constitutional right."  28 U.S.C. § 2253(c)(2).  The certificate of appealability must "indicate

21  which specific issue or issues satisfy" the requirement.  28 U.S.C. § 2253(c)(3).

22        These findings and recommendations are submitted to the United States District

23  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

24  days after being served with these findings and recommendations, any party may file written

25  objections with the court and serve a copy on all parties.  Such a document should be captioned

26  "Objections to Magistrate Judge's Findings and Recommendations."

1          Any reply to the objections shall be served and filed within fourteen days after

2  service of the objections.  The parties are advised that failure to file objections within the

3  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

4  F.2d 1153 (9th Cir. 1991).

5  Dated: 06/06/2011

6                                /s/ Gregory G. Hollows

7                                UNITED STATES MAGISTRATE JUDGE

ggh:0014

8  lars0835.hc

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26